UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CLAIRE BALANI, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ENVIRONMENTAL PROTECTION AGENCY, et al.,<br><br>Defendants. | Civil Action No. 26-2316 (TNM) |

**DEFENDANTS' MOTION TO DISMISS**

Defendants, by and through the undersigned counsel, respectfully move to dismiss Plaintiffs' Complaint, ECF No. 1, pursuant to Federal Rule of Civil Procedure 12(b)(1). The grounds for dismissal are set forth in the accompanying memorandum. A proposed order is also enclosed.

Dated: September 28, 2026

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By: */s/ William Thanhauser*
WILLIAM THANHAUSER, D.C. Bar #1737034
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
(202) 252-7706

*Attorneys for the United States of America*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CLAIRE BALANI, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ENVIRONMENTAL PROTECTION AGENCY, et al.,<br><br>Defendants. | Civil Action No. 26-2316 (TNM) |

**MEMORANDUM IN SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS**

## TABLE OF CONTENTS

Table of Contents ........ i

Table of Authorities ........ ii

Background ........ 1

Legal Standards ........ 3

Argument ........ 4

I. The CSRA's Review Scheme Is Comprehensive and Exclusive ........ 4

II. The Only CSRA Remedy Available to a Removed Probationary Employee Is Review by the OSC. ........ 6

III. Plaintiffs' Implied Arguments for Direct Judicial Review Are Unavailing. ........ 8

Conclusion ........ 11

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Action All. of Senior Citizens of Greater Phila. v. Sullivan*,
930 F.2d 77 (D.C. Cir. 1991) ..... 6
*Am. Butterfly Ass'n v. Wolf*,
977 F.3d 1244 (D.C. Cir. 2020) ..... 3
*Andrad v. Lauer*,
729 F.2d 1475 (D.C. Cir. 1984) ..... 9
*Arbaugh v. Y&H Corp.*,
546 U.S. 500, (2006) ..... 9
*Aref v. Holder*,
774 F. Supp. 2d 147 (D.D.C. 2011) ..... 4
*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..... 1
*Auleta v. Dep't of Justice*,
80 F. Supp. 3d 198 (D.D.C. 2015) ..... 3
*Axon Enter., Inc. v. FTC*,
598 U.S. 175 (2023) ..... 10
*Cross v. Samper*,
501 F. Supp. 2d 59 (D.D.C. 2007) ..... 9
*Elgin v. Dep't of Treasury*,
567 U.S. 1 (2012) ..... 5, 6, 11
*Filebark v. Dep't of Transp.*,
555 F.3d 1009 (D.C. Cir. 2009) ..... 5
*Fornaro v. James*,
416 F.3d 63 (D.C. Cir. 2005) ..... 5
*Gober v. Collins*, Civ. A.,
No. 25-0714 (RC), 2025 WL 1360434 (D.D.C. May 8, 2025) ..... 6, 7, 9, 10
*Graham v. Ashcroft*,
358 F.3d 931 (D.C. Cir. 2004) ..... 5
*Grosdidier v. Broad. Bd. of,*
*Govs.*, 560 F.3d 495 (D.C. Cir. 2009) ..... 4, 5
*Harrison v. Bowen*,
815 F.2d 1505 (D.C. Cir. 1987) ..... 6, 7
*Ho v. Garland*,
106 F.4th 47 (D.C. Cir. 2024) ..... 3
*Hornsby v. Thompson*,
Civ. A. No. 22-1472 (RC), 2023 WL 196185 (D.D.C. Jan. 17, 2023) ..... 9
*Hunt v. Dep't of Agric.*,
740 F. Supp. 2d 41 (D.D.C. 2010) ..... 9
*Joslin v. Dep't of the Interior*,
Case No. 1:26-cv-02029 JLT FJS, 2026 WL 1707794 (E.D. Cal. June 12, 2026) ..... 10
*Marshall v. Honeywell Tech. Solutions, Inc.*,
675 F. Supp. 2d 22 (D.D.C. 2009) ..... 3

*Martin v. United States*,
271 F. Supp. 2d 38 (D.D.C. 2002) .................... 10
*Mastriano v. FAA*,
714 F.2d 1152 (Fed. Cir. 1983) .................... 7
*McCardle*,
74 U.S. 506 (1868) .................... 3
*Nat'l Treasury Emps. Union v. Trump*,
770 F. Supp. 3d 1 (D.D.C. 2025) .................... 7
*Nurriddin v. Acosta*,
327 F. Supp. 3d 147 (D.D.C. 2018) .................... 11
*Nyunt v. Broad. Bd. of*,
*Gov.*, 589 F.3d 445 (D.C. Cir. 2009) .................... 5
*Payne v. Biden*,
62 F.4th 598 (D.C. Cir. 2023) .................... 6
*Payne v. Biden*,
144 S. Ct. 480 (2023) .................... 6
*Runkle v. Gonzales*,
391 F. Supp. 2d 210 (D.D.C. 2005) .................... 10
*Sagar v. Lew*,
211 F. Supp. 3d 262 (D.D.C. 2016) .................... 7, 8
*Sagar v. Mnuchin*,
No. 18-5183, 2019 WL 667201 (D.C. Cir. Jan. 29, 2019) .................... 6
*Shehadeh v. Off. of Pers. Mgmt.*,
Civil No. 25-1525-BAH, 2026 WL 2150287 (D. Md. July 27, 2026) .................... 10
*Shulter v. United States*,
531 F.3d 930 (D.C. Cir. 2008) .................... 3
*Steadman v. Governor, U.S. Soldiers' and Airmen's Home*,
918 F.2d 963 (D.C. Cir. 1990) .................... 9
*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998) .................... 3
*Thunder Basin Coal Co. v. Reich*,
510 U.S. 200 (1994) .................... 6
*United States v. Adewani*,
467 F.3d 1340 (D.C. Cir. 2006) .................... 6
*United States v. Fausto*,
484 U.S. 439 (1988) .................... 4, 5, 8
*Weaver v. United States Info. Agency*,
87 F. 3d 1429 (D.C. Cir. 1996) .................... 9
*Wren v. Merit Sys. Prot. Bd.*,
681 F.2d 867 (D.C. Cir. 1982) .................... 10

**Statutes**

5 U.S.C. §§ 1211-19 .................... 7
5 U.S.C. § 1214(a)(1)(A) .................... 7
5 U.S.C. § 1214(b)(2)(B) .................... 8
5 U.S.C. § 2302 .................... 2

5 U.S.C. § 2302(b)(10) ........ 2
5 U.S.C. § 7511 ........ 7
5 U.S.C. § 7511(a) ........ 6
5 U.S.C. § 7701(a) ........ 4
5 U.S.C. § 7702(a)(1)(B) ........ 5
5 U.S.C. § 7703(b)(2) ........ 5

**Rules**

Federal Rule of Civil Procedure 12(b)(1) ........ 1, 3, 4
Federal Rule of Civil Procedure 12(b)(6) ........ 4

Defendants, by and through the undersigned counsel, respectfully file this memorandum of points and authorities in support of their motion to dismiss Plaintiffs Claire Balani, Lane To, and Alexis Wright's (collectively, "Plaintiffs") Complaint, ECF No. 1, under Federal Rule of Civil Procedure ("Rule") 12(b)(1) for lack of subject matter jurisdiction.

**BACKGROUND**

Defendants assume the following factual allegations, taken from Plaintiffs' complaint, to be true solely for the purpose of evaluating their pleadings' sufficiency. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiffs are three former employees of the Environmental Protection Agency ("EPA"). Compl. ¶¶ 11-13. Each began working at EPA between November 2024 and January 2025. *Id.* ¶¶ 19, 23, 27. In June 2025, Plaintiffs signed an open letter entitled, "Declaration of Dissent," that was hosted by an organization called Stand Up for Science and addressed to the EPA Administrator. *Id.* ¶¶ 29-30; *see also* ECF No. 1-1 (letter). The letter, which was signed by over 320 other persons, expressed that its signatories "stand together in dissent against the current administration's focus on harmful deregulation, mischaracterization of previous EPA actions, and disregard for scientific expertise." Compl. ¶¶ 32, 44. The letter represented that Plaintiffs signed the letter in their "personal capacity, on [their] own time, and without Agency resources" and "both as concerned citizens and dedicated civil servants." *Id.* ¶ 37. Each Plaintiff included their job title when signing the letter, but alleges understanding the inclusion of their title to have been only for identification purposes. *Id.* ¶ 45. The letter was transmitted to the EPA Administrator on June 30, 2025, and concurrently published online. *Id.* ¶¶ 43-44.

In July 2025, EPA opened an investigation into Plaintiffs' decision to sign the letter and placed each Plaintiff on administrative leave pending its conclusion. *See id.* ¶¶ 50, 53, 56, 60. As part of that investigation, various EPA employees opined on whether personnel action could be

taken against employees who signed the letter, *see id.* ¶¶ 46-48, and the agency developed a spreadsheet finding that Plaintiffs did not sign the letter on their work computers. *See id.* ¶ 64. Upon the conclusion of the agency's investigation, in August and September 2025, each Plaintiff was provided notice that they were being terminated on the ground that their continued employment was not in the public interest. *See id.* ¶¶ 67, 69, 71. At the time of their termination, each Plaintiff was within the first year of their employment with EPA, and thus a "probationary" employee. *Id.* ¶¶ 6, 85.

In December 2025, each Plaintiff filed a complaint with the Office of Special Counsel ("OSC"). *Id.* ¶ 95. Recognizing that a complaint with the OSC generally must allege a violation of 5 U.S.C. § 2302 (i.e., a prohibited personnel practice), Plaintiffs "attempted to raise a claim that they were discriminated against 'on the basis of conduct which does not adversely affect the performance of the employee or applicant or the performance of others,' . . . and that they were subjected to a personnel action that 'violates any law, rule, or regulation implementing, or directly concerning the merit system principles.'" *Id.* (quoting 5 U.S.C. § 2302(b)(10), (12)). The OSC has opened an investigation into Plaintiffs' claims. *See id.* ¶ 98.

On June 30, 2026, Plaintiffs initiated the instant action against EPA and its Administrator. Plaintiffs concede that, because they were within their probationary period at the time of their termination, they "lack[] . . . a path to judicial review." *Id.* ¶ 80; *see also id.* ¶ 86 (stating that probationary employees, like Plaintiffs, "have no right to challenge their termination at the Merit Systems Protection Board and thus have no right to obtain judicial review of their termination through an appeal from the Board to the U.S. Court of Appeals for the Federal Circuit"); *id.* ¶ 6 ("Plaintiffs bring the issue to this Court because, as probationary employees, they have no right to appeal their terminations to the Merit Systems Protection Board."). Plaintiffs state they have

administrative recourse through the OSC, *see id.* ¶ 89, but note that, at the time of the Complaint's filing, they had received no indication from the OSC as to whether it intends to seek corrective action on their behalf. *See id.* ¶ 100.

Notwithstanding their acknowledged lack of a path to judicial relief, Plaintiffs allege a single claim: that their terminations were in retaliation for signing the Declaration of Dissent and—because the Declaration was "private citizen speech addressing matters of public concern"—thus violative of the First Amendment. *Id.* ¶¶ 101-108. For relief, Plaintiffs seek, among other things, a declaration that their terminations violated the First Amendment; and an injunction both barring Defendants from enforcing the terminations and requiring Defendants to reinstate them to their positions with backpay. *Id.* at Prayer for Relief.

## LEGAL STANDARDS

Rule 12(b)(1) provides that a federal court must dismiss a case when it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "Generally, '[b]efore a court may address the merits of a complaint, it must assure that it has jurisdiction to entertain the claims.'" *Auleta v. Dep't of Justice*, 80 F. Supp. 3d 198, 201 (D.D.C. 2015) (quoting *Marshall v. Honeywell Tech. Solutions, Inc.*, 675 F. Supp. 2d 22, 24 (D.D.C. 2009)). It is the plaintiff's burden to demonstrate subject matter jurisdiction. *Shulter v. United States*, 531 F.3d 930, 932 (D.C. Cir. 2008). If the plaintiff cannot meet their burden, the court must dismiss the action. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (citing *Ex parte McCardle*, 74 U.S. 506 (1868)). In considering a motion to dismiss for lack of subject matter jurisdiction, a court "'accept[s] the . . . complaint's well-pleaded factual allegations as true'" and "draws all reasonable inferences" in the plaintiff's favor. *Ho v. Garland*, 106 F.4th 47, 50 (D.C. Cir. 2024) (quoting *N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d 1244, 1249 (D.C. Cir. 2020); holding as such for facial challenges). However, "[b]ecause subject matter jurisdiction focuses on the court's power to hear the claim, . . . the court must give the plaintiff's

factual allegations closer scrutiny when resolving a Rule 12(b)(1) motion than would be required for a Rule 12(b)(6) motion[.]" *Aref v. Holder*, 774 F. Supp. 2d 147, 159 (D.D.C. 2011).

**ARGUMENT**

This Court lacks subject matter jurisdiction over Plaintiffs' claim, thus warranting its dismissal. The Civil Service Reform Act ("CSRA") precludes judicial review where the statute provides no relief. And, here, the CSRA does just that—it provides no avenue for Plaintiffs to seek judicial review and, in so doing, forecloses their challenge. Plaintiffs' arguments otherwise are unavailing.

**I. <u>The CSRA's Review Scheme Is Comprehensive and Exclusive.</u>**

The CSRA "established a comprehensive system for reviewing personnel action taken against federal employees." *United States v. Fausto*, 484 U.S. 439, 455 (1988). That system integrates administrative and judicial review, and is "designed to balance the legitimate interests of the various categories of federal employees with the needs of sound and efficient administration." *Id.* at 445. A "structural element" of "the framework of the CSRA" is "the primacy of the" Merit Systems Protection Board ("MSPB") "for administrative resolution of disputes over adverse personnel action, and the primacy of the United States Court of Appeals for the Federal Circuit for judicial review." *Id.* at 449. Under this system, an employee challenging an adverse personnel action generally must file an administrative appeal with the MSPB. 5 U.S.C. § 7701(a). Upon the Board's rendering of an adverse final order or decision, the employee may then petition for judicial review by the U.S. Court of Appeals for the Federal Circuit, with limited exceptions not relevant here. *See id.* § 7703(a), (b)(1)(A).

The CSRA's review scheme is both "comprehensive and exclusive." *Grosdidier v. Broad. Bd. of Govs.*, 560 F.3d 495, 497 (D.C. Cir. 2009). It is "comprehensive" in that it "regulates virtually every aspect of federal employment and prescribes in great detail the protections and

remedies applicable to adverse personnel actions, including the availability of administrative and judicial review." *Nyunt v. Broad. Bd. of Gov.*, 589 F.3d 445, 448 (D.C. Cir. 2009) (cleaned up). Meanwhile, it is "exclusive" in that "[i]t constitutes the remedial regime for federal employment and personnel complaints." *Id.* "When Congress wants to preserve remedies outside the CSRA, it does so expressly; for example, the CSRA maintains federal employees' rights to bring suit under Title VII and other anti-discrimination laws." *Id.*; *see also* 5 U.S.C. §§ 7702(a)(1)(B), 7703(b)(2). With limited exceptions not relevant here, then, "the CSRA review scheme . . . preclude[s] district court jurisdiction over [federal personnel] claims." *Elgin v. Dep't of Treasury*, 567 U.S. 1, 23 (2012).

The CSRA's review scheme is exclusive even when "the CSRA provides no relief," and in fact, "precludes other avenues of relief." *Graham v. Ashcroft*, 358 F.3d 931, 935 (D.C. Cir. 2004). In other words, "the CSRA is the exclusive avenue for suit even if the plaintiff cannot prevail in a claim under the CSRA." *Grosdidier*, 560 F.3d at 497. "Congress designed the CSRA's remedial scheme with care, 'intentionally providing—and intentionally not providing—particular forums and procedures for particular kinds of claims.'" *Id.* (quoting *Filebark v. Dep't of Transp.*, 555 F.3d 1009, 1010 (D.C. Cir. 2009)); *see also Fausto*, 484 U.S. at 448-49 ("[T]he absence of provision for these employees to obtain judicial review is not an uninformative consequence of the limited scope of the statute, but rather manifestation of a considered congressional judgment that they should not have statutory entitlement to review for adverse action of [this] type . . . ."). Simply put, "what you get under the CSRA is what you get." *Fornaro v. James*, 416 F.3d 63, 67 (D.C. Cir. 2005).

The CSRA precludes district court jurisdiction even when a plaintiff raises constitutional claims. *See, e.g.*, *Elgin*, 567 U.S. at 12 ("constitutional claims, such as claims that an agency took

adverse employment action in violation of an employee's [constitutional] rights, . . . must be brought within the CSRA scheme"). Although the D.C. Circuit once recognized narrow exceptions to the CSRA's exclusivity for constitutional claims, it has since recognized that "such exceptions cannot survive the Supreme Court's subsequent decisions in *Thunder Basin* and *Elgin*—clarifying that a statutory scheme may exclusively preclude jurisdiction when Congress's intent to do so is 'fairly discernible.'" *Payne v. Biden*, 62 F.4th 598, 606 (D.C. Cir. 2023) (citing *Elgin*, 567 U.S. at 12, and *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207 (1994)).[1] Accordingly, the CSRA precludes district court jurisdiction even if a plaintiff raises "constitutional challenges." *Id.* at 603.

## II. The Only CSRA Remedy Available to a Removed Probationary Employee Is Review by the OSC.

Among its protections, the CSRA "authorizes 'employees' to challenge certain 'adverse actions,' including removal," through the aforementioned MSPB–Federal Circuit review process. *Gober v. Collins*, Civ. A. No. 25-0714 (RC), 2025 WL 1360434, at *4 (D.D.C. May 8, 2025) (citing 5 U.S.C. §§ 7512, 7513(d); 5 C.F.R. § 1201.3(a)(1)). But the CSRA excludes probationary employees from the definition of "employee[s]" for purposes of its removal provisions, *see* 5 U.S.C. § 7511(a), and thus generally excludes terminated probationary employees from seeking review through this process. *See Harrison v. Bowen*, 815 F.2d 1505, 1515 (D.C. Cir. 1987); *see, e.g.*, *Sagar v. Mnuchin*, No. 18-5183, 2019 WL 667201, at *1 (D.C. Cir. Jan. 29, 2019) (upholding

---

[1] The Supreme Court subsequently granted certiorari and vacated *Payne*'s judgment on mootness grounds. *See Payne v. Biden*, 144 S. Ct. 480 (2023) (Mem.). But *Payne* remains binding precedent: "When the Supreme Court vacates a judgment of [the D.C. Circuit] without addressing the merits of a particular holding in the panel opinion, that holding continues to have precedential weight, and in the absence of contrary authority, [the D.C. Circuit] do[es] not disturb it." *United States v. Adewani*, 467 F.3d 1340, 1342 (D.C. Cir. 2006) (cleaned up); *accord Action All. of Senior Citizens of Greater Phila. v. Sullivan*, 930 F.2d 77, 83 (D.C. Cir. 1991) (same).

dismissal of action by "a probationary employee who could not have appealed his termination to the MSPB"); *Gober*, 2025 WL 1360434, at *5; *Sagar v. Lew*, 211 F. Supp. 3d 262, 268-69 (D.D.C. 2016) ("[T]he fact that the CSRA largely excludes probationary employees merely evinces Congress's intent not to allow probationary employees to challenge their removal in district court . . . . [Indeed i]t would be anomalous indeed to permit probationary employees—whom Congress expressly left out of its remedial scheme—to challenge their removal directly in district court . . . while requiring permanent employees—whom Congress did include—to exhaust their CSRA remedies first."); *Nat'l Treasury Emps. Union v. Trump*, 770 F. Supp. 3d 1, 7 (D.D.C. 2025) ("Probationary employees, however, generally do not enjoy a right to appeal to the MSPB."); *see also* Compl. ¶ 88 ("Probationary employees do not have access to that administrative process"). Instead, in effect, probationary employees are still considered "applicants" under the extended hiring and evaluation period of the CSRA, *see* 5 U.S.C. § 7511, and, accordingly, retain MSPB "appeal rights . . . [that] are extremely limited" and not implicated here. *Mastriano v. FAA*, 714 F.2d 1152, 1155 (Fed. Cir. 1983); *see also Gober*, 2025 WL 1360434, at *5 (noting probationary employees may only directly appeal their termination to the MSPB where they allege it was based on partisan policial reasons, marital status, or pre-appointment conditions).

Probationary employees "have a CSRA remedy available to them—review by OSC." *Gober*, 2025 WL 1360434, at *6; *see* 5 U.S.C. §§ 1211-19 (OSC provisions). The OSC is a "largely autonomous public prosecutor with broad investigative powers," *Harrison*, 815 F.2d at 1512, that is required to investigate complaints alleging prohibited personnel practices. 5 U.S.C. § 1214(a)(1)(A). An appeal to the OSC may ultimately result in judicial review. Where the OSC "determines that there are reasonable grounds to believe that a prohibited personnel practice has occurred," it "shall report the determination . . . to the [MSPB], the agency involved, and the Office

of Personnel Management." 5 U.S.C. § 1214(b)(2)(B). And "[i]f, after a reasonable period of time, the agency does not act to correct the prohibited personnel practice, the [OSC] may petition the [MSPB] for corrective action." *Id.* § 1214(b)(2)(C). Where the MSPB, in response, issues a final order or decision adverse to the probationary employee, the employee may then seek review by the Federal Circuit. *See id.* § 1214(c). But where the OSC has not yet acted, or later declines to act, a district court lacks jurisdiction to hear a plaintiff's claims. *See Fausto*, 484 U.S. at 448-49 ("the absence of provision for these employees to obtain judicial review is not an uninform[ed] consequence of the limited scope of the statute, but rather a manifestation of a considered congressional judgment that they should not have statutory entitlement to review for adverse action of [this] type").

Here, Plaintiffs acknowledge that, because of the CSRA's preclusive effect, their sole avenue for recourse is through the OSC. Compl. ¶ 89 ("Given their exclusion from the right to appeal to the [MSPB], the sole administrative recourse that was even potentially available to Plaintiffs was to file a complaint requesting that the [OSC] investigate a prohibited personnel practice."). And although they allege that the OSC had not, at the time of the Complaint's filing, concluded its investigation after nearly seven months, *id.* ¶ 100, no provision in the CSRA allows a terminated probationary employee to file suit in federal district court while their OSC complaint is pending. *See, e.g.*, *Sagar*, 211 F. Supp. 3d at 268-69 (emphasizing that probationary employees retain no special exclusion from administrative exhaustion).

## III. <u>Plaintiffs' Implied Arguments for Direct Judicial Review Are Unavailing.</u>

To the extent Plaintiffs intend to argue that, because they bring a constitutional claim, they can bypass the OSC or the MSPB, such argument is without basis. As discussed above, simply alleging "constitutional violations does not take [] claims beyond the remedial provisions of the CSRA." *Hunt v. Dep't of Agric.*, 740 F. Supp. 2d 41, 48 (D.D.C. 2010); *see Steadman v. Governor,*

*U.S. Soldiers' and Airmen's Home*, 918 F.2d 963, 967 (D.C. Cir. 1990) (federal employees may not circumvent CSRA even when they raise constitutional claims); *see, e.g.*, *Gober*, 2025 WL 1360434, at *6 (finding that plaintiffs have not "shown that the CSRA encompasses a carve-out for constitutional claims like theirs" and explaining, "[p]robationary employees, too, must channel their constitutional claims through the CSRA in the first instance"); *Cross v. Samper*, 501 F. Supp. 2d 59, 62 (D.D.C. 2007) (holding that probationary employee "cannot end-run the CSRA and advance constitutional claims in court"). A federal employee may maintain constitutional claims in district court "[o]nly in the unusual case in which the constitutional claim raises issues totally unrelated to the CSRA procedures." *Steadman*, 918 F.2d at 967 (dismissing federal employee's claim for lack of jurisdiction where plaintiff brought Due Process claim challenging adverse employment action covered by CSRA); *cf. Weaver v. United States Info. Agency*, 87 F. 3d 1429, 1432-35 (D.C. Cir. 1996) (exhaustion of CSRA remedies not required, as the Court would have jurisdiction over plaintiff's claim that regulation at issue violated her First Amendment rights if asserted outside context of the agency's personnel action against her); *Andrad v. Lauer*, 729 F.2d 1475, 1490-93 (D.C. Cir. 1984) (exhaustion under CSRA not required where plaintiffs challenged defendants' constitutional authority to issue regulations). Plaintiffs do not, and cannot, allege that their instant constitutional challenge falls within this narrow exception.

Further, to the extent Plaintiffs intend to argue that, because their OSC complaints have been pending for several months, they may bypass the OSC or the MSPB, such argument is likewise without basis. "With respect to the CSRA, exhaustion of administrative remedies is a jurisdictional prerequisite to suit." *Hornsby v. Thompson*, Civ. A. No. 22-1472 (RC), 2023 WL 196185, at *3 (D.D.C. Jan. 17, 2023) (citing *Weaver*, 87 F.3d at 1433); *see also Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514, (2006) ("[S]ubject-matter jurisdiction, because it involves the court's

power to hear a case, can never be forfeited or waived." (internal quotation marks and citation omitted)). This is so even if Plaintiffs believe that pursuing their complaints in the OSC or MSPB "to their fullest extent would be futile." *Runkle v. Gonzales*, 391 F. Supp. 2d 210, 235 (D.D.C. 2005) (citing *Martin v. United States*, 271 F. Supp. 2d 38, 46 (D.D.C. 2002)). The fact that a probationary employee "has not received a decision" from the OSC "does not relieve him of the CSRA's remedial scheme or excuse him of its exhaustion requirements." *Shehadeh v. Off. of Pers. Mgmt.*, Civil No. 25-1525-BAH, 2026 WL 2150287, at *6 (D. Md. July 27, 2026) (collecting cases); *see also Gober*, 2025 WL 1360434, at *5 n.2 ("Plaintiffs have no support for the position that this Court has jurisdiction while the CSRA administrative review process is ongoing."). Indeed, even where the OSC takes an unreasonably long time to resolve a complaint, that still does not create a basis for seeking relief in federal district court. *See, e.g.*, *Joslin v. Dep't of the Interior*, Case No. 1:26-cv-02029 JLT FJS, 2026 WL 1707794, at *6 (E.D. Cal. June 12, 2026) ("[E]ven if the OSC process fell short of ensuring a meaningful opportunity for judicial review of a constitutional claim, the better course would be to entertain a judicial complaint only after the OSC process had run its full course, not before"); *see also Wren v. Merit Sys. Prot. Bd.*, 681 F.2d 867, 876 & 876 n.9 (D.C. Cir. 1982) (holding that, even where OSC has not "fulfilled its charge," plaintiff retained no remedy against the defendant agency before the court). Protracted administrative proceedings "do not justify immediate review." *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 192 (2023).

Finally, to the extent Plaintiffs intend to argue that, because a staff attorney at EPA stated Plaintiffs "may . . . have a cause of action in federal court," Compl. ¶ 48, they may bypass the OSC or the MSPB, that argument, too, is unavailing. The CSRA determines whether this Court has subject matter jurisdiction—not the privileged statements of an agency staff attorney. *See* ECF

No. 1-4 (email marked "CUI//PRIVILEGE"). And, as discussed above, the CSRA channels applicable claims to the MSPB, requires administrative exhaustion, and unequivocably forecloses judicial review in its absence. *See also id.* (stating that Plaintiffs may not seek relief through "appeal[ing] [their] termination to MSPB").

Ultimately, at base, the "CSRA bars any judicial review of adverse personnel actions by federal employees that are subject to its exclusive review mechanism." *Nurriddin v. Acosta*, 327 F. Supp. 3d 147, 161 (D.D.C. 2018). This "exclusivity does not turn on the constitutional nature of an employee's claim, but rather on the type of the employee and the challenged employment action." *Elgin*, 567 U.S. at 15. And this exclusivity may not be bypassed merely because a plaintiff's OSC complaint remains pending. Here, the CSRA provides no avenue for Plaintiffs to seek judicial review and, thus, the Court lacks jurisdiction over their claims.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' complaint.

Dated: September 28, 2026

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By: *\/s/ William Thanhauser*

WILLIAM THANHAUSER, D.C. Bar #1737034
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
(202) 252-7706

*Attorneys for the United States of America*